**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**JEFFREY ROCQUE, Executor for the**    :
**Estate of Gwen Rocque, and**    :
**LAWRENCE ROCQUE, Individually,**    :
    :
    **Plaintiffs,**    :
    :
    **v.**    : **CIVIL ACTION NO.:**
    :
    :
    : **COMPLAINT AND JURY DEMAND**
    :
**VISITING NURSE SERVICE OF**    :
**NEW YORK, VNS HEALTH,**    :
**VISITING NURSE SERVICES IN**    :
**WESTCHESTER, INC., VNS**    :
**WESTCHESTER and CALVARY**    :
**HOSPITAL, INC.,**    :
    **Defendants.**    :
-------------------------------------------------------X

## COMPLAINT

Plaintiffs, JEFFREY ROCQUE, as Executor for the Estate of Gwen Rocque, and LAWRENCE

ROCQUE, through undersigned counsel, sue Defendants, VISITING NURSE SERVICE OF

NEW YORK, VNS HEALTH, VISITING NURSE SERVICES IN WESTCHESTER, INC.,

VNS WESTCHESTER and CALVARY HOSPITAL, INC. and allege the following upon

information and belief:

## NATURE OF THE ACTION

1.   This action is brought on behalf of the estate of Gwen Rocque (hereinafter "Mrs.

Rocque" or "Decedent"), by the Executor of her estate, Jeffrey Rocque ("Plaintiff"), and

Lawrence Rocque ("Mr. Rocque"). Plaintiffs and Mrs. Rocque  requested, through Memorial

Sloan Kettering Cancer Center ("MSK"), services from Visiting Nurse Service of New York

("VNS NY") and were denied same on November 25, 2019, solely due to their disability.

2.   This action is also brought on behalf of the estate of Decedent, by the Plaintiff, and Mr. Rocque. Plaintiffs and Mrs. Rocque  requested, through MSK, services from Visiting Nurse Services in Westchester, Inc. ("VNS WESTCHESTER") and were denied on November 25, 2019 solely due to their disability.

3.   This action is also brought on behalf of the estate of Decedent Plaintiff and Mr. Rocque. Decedent and Mr. Rocque requested, through MSK, services from CALVARY HOSPITAL, INC ("CALVARY HOSPITAL").

4.   Visiting Nurse Service of New York became known as VNS Health on or about May 18, 2022.

5.   VNS Health is a successor corporation to Visiting Nurse Service of New York.

6.   Visiting Nurse Services in Westchester, Inc. became known as VNS Westchester on or about April 8, 2013.

7.   VNS Westchester is a successor corporation to Visiting Nurse Services in Westchester, Inc.

8.   At all times hereinafter mentioned, VNS NY is a health care organization engaged in the business of, among other things, rendering medical care, treatment, and services to the general public.

9.   At all times hereinafter mentioned, VNS WESTCHESTER is a health care organization engaged in the business of, among other things, rendering medical care, treatment, and services to the general public.

10. At all times hereinafter mentioned, CALVARY HOSPITAL is a health care organization engaged in the business of, among other things, rendering medical care, treatment, and services to the general public.

11. At all times hereinafter mentioned, Defendant VNS NY was responsible for the acts and omissions committed by its employees and/or agents, while acting in the scope of said employment or agency, relating to the medical care and treatment rendered to patient, Decedent Gwen Rocque.

12. At all times hereinafter mentioned, Defendant VNS WESTCHESTER was responsible for the acts and omissions committed by its employees and/or agents, while acting in the scope of said employment or agency, relating to the medical care and treatment rendered to patient, Decedent Gwen Rocque.

13. At all times hereinafter mentioned, Defendant CALVARY HOSPITAL was responsible for the acts and omissions committed by its employees and/or agents, while acting in the scope of said employment or agency, relating to the medical care and treatment rendered to patient, Decedent Gwen Rocque, and her companion and husband, Mr. Lawrence Rocque.

14. Mr. and Mrs. Rocque were directly harmed by VNS NY'S failure to provide ASL interpretive services.

15. Mrs. Rocque was directly and physically harmed by VNS WESTCHESTER'S failure to provide ASL interpretive services.

16. Mrs. Rocque was directly and physically harmed by CALVARY HOSPITAL'S failure to provide ASL interpretive services.

17. Mrs. Rocque was deaf and communicated primarily through American Sign Language, (hereinafter referred to as "ASL"). As ASL is a separate and distinct language from English, Mrs. Rocque's ability to read and write in English was limited.

18. Mr. Rocque is deaf and communicates primarily through ASL.

19. Mr and Mrs. Rocque were denied equal access to benefits, services, and effective communication with VNS NY'S staff because of VNS NY'S failure to provide Plaintiffs and Mrs. Rocque with qualified sign language interpreter services and failed to provide Mrs. Rocque with VNS services.

20. Mr. and Mrs. Rocque were denied equal access to benefits, services, and effective communication with VNS WESTCHESTER'S staff because of VNS WESTCHESTER'S failure to provide Plaintiffs and Mrs.Rocque with qualified sign language interpreter services and failed to provide Mrs. Rocque with VNS services.

21. Mr. and Mrs. Rocque were  denied equal access to benefits, services, and effective communication with CALVARY HOSPITAL, INC.'S staff because of CALVARY HOSPITAL'S failure to provide Mr. and Mrs. Rocque with qualified sign language interpreter services.

22. Between November 26, 2019, after VNS NY notified Memorial Sloan Kettering that it was not going to provide services to Mrs. Rocque, and December 5, 2019, the day Mrs. Rocque passed away, Mrs. Rocque suffered an aggravation of physical pain and suffering, as well as emotional damages for failure to have VNS NY services at her home.

23. Between November 26, 2019, after VNS WESTCHESTER notified Memorial Sloan Kettering that it was not going to provide services to Mrs. Rocque, and December 5, 2019, the day Mrs. Rocque passed away, Mrs. Rocque suffered an aggravation of physical pain and suffering, as well as emotional damages for failure to have VNS WESTCHESTER services at her home.

24. On December 5th, 2019, the day Mrs. Rocque passed away, Mrs. Rocque suffered an aggravation of physical pain and suffering, as well as emotional damages for failure to have

CALVARY HOSPITAL'S American Sign Language services provided to her at CALVARY HOSPITAL'S premises.

25. Mrs. Rocque's aggravation of physical pain and suffering, as well as emotional damages, were due to VNS NY'S decision to not provide ASL services to Mrs. Rocque and to not assign a visiting nurse to care for Mrs. Rocque, on site at Mrs. Rocque's home, to ameliorate her physical suffering.

26. Mrs. Rocque's aggravation of physical pain and suffering, as well as emotional damages, were due to VNS WESTCHESTER'S decision to not provide ASL services to Mrs. Rocque and to not assign a visiting nurse to care for Mrs. Rocque, on site at Mrs. Rocque's home, to ameliorate her physical suffering.

27. Mrs. Rocque's aggravation of physical pain and suffering, as well as emotional damages, were due to CALVARY HOSPITAL'S decision to not provide ASL services to Mrs. Rocque at its premises.

28. Mr. Rocque, as Mrs. Rocque's companion, also suffered emotional damages as a result of VNS NY'S decision to not provide ASL services to Mr. and Mrs. Rocque and to not assign a visiting nurse to care for Mrs. Rocque, on site at Mrs. Rocque's home, to ameliorate her physical suffering.

29. Mr. Rocque, as Mrs. Rocque's companion, also suffered emotional damages as a result of VNS WESTCHESTER'S decision to not provide ASL services to Mr. and Mrs. Rocque and to not assign a visiting nurse to care for Mrs. Rocque, on site at Mrs. Rocque's home, to ameliorate her physical suffering.

30. Mr. Rocque, as Mrs. Rocque's companion, also suffered emotional damages as a result of CALVARY HOSPITAL'S decision to not provide ASL services to Mr. and Mrs. Rocque.

31. Plaintiffs seek monetary damages to redress the injuries Mrs. Rocque and Mr. Rocque suffered as a result of being discriminated against and deprived of public services and accommodations by VNS NY on the basis of disability, record of disability and/or perceived disability under Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law.

32. Plaintiffs seek monetary damages to redress the injuries Mrs. Rocque and Mr. Rocque suffered as a result of being discriminated against and deprived of public services and accommodations by VNS WESTCHESTER on the basis of disability, record of disability and/or perceived disability under Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law.

33. Plaintiffs seek monetary damages to redress the injuries Mrs. Rocque and Mr. Rocque suffered as a result of being discriminated against and deprived of public services and accommodations by CALVARY HOSPITAL on the basis of disability, record of disability and/or perceived disability under Section 504 of the Rehabilitation Act, New York State Human Rights Law and the New York City Human Rights Law.

34. The Complaint states causes of action under federal, state, and city law for deprivations of civil rights and states common law causes of action for tort.

## JURISDICTION AND VENUE

35. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. §794 et seq. Plaintiffs bring this action to redress the deprivation of rights, privileges, and immunities experienced by Mr. Rocque and Mrs. Rocque.

36. Plaintiffs also invoke the pendant jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a) for state law claims of the New York State Human Rights Law and New York City Human Rights Law.

37. Plaintiffs, JEFFREY ROCQUE, as Executor for the Estate of GWEN ROCQUE, and LAWRENCE ROCQUE, bring this action under federal and state laws seeking compensatory damages and attorney's fees from Defendant VNS NY in violation of Mrs. and Mr. Rocque's rights afforded by the United States and New York Constitution and under the laws of The State of New York and the City of New York.

38. Plaintiffs, JEFFREY ROCQUE, as Executor for the Estate of GWEN ROCQUE, and LAWRENCE ROCQUE, bring this action under federal and state laws seeking compensatory damages and attorney's fees from Defendant VNS WESTCHESTER in violation of Mrs. and Mr. Rocque's rights afforded by the United States and New York Constitution and under the laws of The State of New York and the City of New York.

39. Plaintiffs, JEFFREY ROCQUE, as Executor for the Estate of GWEN ROCQUE, and LAWRENCE ROCQUE, bring this action under federal and state laws seeking compensatory damages and attorney's fees from Defendant CALVARY HOSPITAL in violation of Mrs. and Mr. Rocque's rights afforded by the United States and New York Constitution and under the laws of The State of New York and the City of New York.

40. The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the events having operative significance in this case which give rise to the claims herein occurred within this District.

41. This Court has *in personam* jurisdiction over Defendants because they are located in, conducts operations within, transacts business in and provides services within the City of New York or Westchester County, State of New York.


## **PARTIES**

42. Plaintiff Jeffrey Rocque is a resident of the State of New Carolina whose address is 4008 Hiddenwood Court, Greensboro, North Carolina .

43. Decedent Gwen Rocque was a resident of the State of New York whose address was 30 Seaview Avenue, New Rochelle.

44. Plaintiff Lawrence Rocque is a resident of the State of New York whose address is 30 Seaview Avenue, New Rochelle.

45. Defendant Visiting Nurse Service of New York was a domestic, not-for-profit corporation, duly organized and existing under and by virtue of the law of the State of New York.

46. Defendant VNS Health is a domestic, not-for-profit corporation, duly organized and existing under and by virtue of the law of the State of New York.

47. Defendant VNS Health is a successor corporation to Visiting Nurse Service of New York or otherwise is the new name for Visiting Nurse Service of New York.

48. Defendant Visiting Nurse Services in Westchester, Inc. was a domestic, not-for-profit corporation, duly organized and existing under and by virtue of the laws of the State of New York.

49. Defendant VNS WESTCHESTER is a successor corporation to Visiting Nurse Services in Westchester, Inc. or otherwise is the new name for Visiting Nurse Services in Westchester, Inc.

50. Defendant CALVARY HOSPITAL is a domestic, not-for-profit corporation, duly organized and existing under and by virtue of the law of the State of New York.

## MATERIAL FACTS

51. At all times material herein, Mrs. Rocque was deaf and her primary language was American Sign Language.

52. Upon information and belief, Mrs. Rocque developed cancer.

53. In 2019, Mrs. Rocque was admitted as an outpatient at MSK.

54. Mrs. Rocque availed herself of services as an outpatient.

55. Mrs. Rocque would travel from her home and receive treatment on an ambulatory basis at MSK.

56. In November 2019, Mrs. Rocque requested, through MSK, to receive visiting nurse services to provide care to her, including the alleviation of pain due to her cancer.

57. In November 2019, Mrs. Rocque requested, through MSK, to receive palliative services to provide care to her, including the alleviation of pain due to her cancer, outside of her home.

58. In or about November 2019, staff at MSK contacted VNS NY to request home-care services for Mrs. Rocque.

59. In or about November 2019, staff at MSK contacted VNS WESTCHESTER to request home-care services for Mrs. Rocque.

60. In or about the end of November 2019, or early December, 2019 staff at MSK contacted CALVARY HOSPITAL to request home-care services for Mrs. Rocque.

61. On November 25, 2019, after discovering Plaintiffs were deaf and would require the services of an ASL interpreter, VNS NY made a determination that it would not provide a sign language interpreter and would not provide services for Mrs. and Mr. Roque. Thus, VNS NY refused to assign a visiting nurse to care for Mrs. Rocque and provide support services for Mr. Rocque.

62. On November 25, 2019, after discovering Plaintiffs were deaf and would require the services of an ASL interpreter, VNS WESTCHESTER made a determination that it would not provide a sign language interpreter and would not provide services for Mrs. and Mr. Roque. Thus, VNS WESTCHESTER refused to assign a visiting nurse to care for Mrs. Rocque and provide support services for Mr. Rocque.

63. On December 5th, 2019, after discovering Plaintiffs were deaf and would require the services of an ASL interpreter, CALVARY HOSPITAL failed to provide such services to Mrs. and Mr. Roque.

64. On or about November 26, 2019, Mrs. Rocque and Mrs. Rocque's daughter were advised that VNS NY would not send a nurse because it would not provide an interpreter, that VNS NY had dropped Mrs. Rocque's case, and therefore would not assign a visiting nurse to care for Mrs. Rocque.

65. On or about November 26, 2019, Mrs. Rocque and Mrs. Rocque's daughter were advised that VNS WESTCHESTER would not send a nurse because it would not provide an interpreter, that VNS WESTCHESTER had dropped Mrs. Rocque's case, and therefore would not assign a visiting nurse to care for Mrs. Rocque.

66. On November 29, 2019, Mrs. Rocque was brought to MSK to receive IVF hydration treatment.

67. Following November 29, 2019, Mrs. Rocque and her family were advised to transfer Mrs. Rocque to hospice services.

68. For three consecutive days, from December 3, 2019 to December 5, 2019, and before those dates, Mrs. Rocque's daughter made multiple calls to MSK reporting Mrs. Rocque's symptoms of abdominal pain, a hard and distended abdomen, restlessness, anxiety, and insomnia.

69. MSK sought to reduce Mrs. Rocque's pain and suffering.

70. Mrs. Rocque's daughter was given an e-prescription for medication, although it failed to alleviate Mrs. Rocque's pain. Mrs. Rocque continued to suffer from severe pain, accompanied by dark emesis.

71. On December 5, 2019, Mrs. Rocque was transferred to hospice services at Calvary Hospital.

72. On December 5th, 2019, during very traumatic medical care, both Mrs. Rocque and Mr. Rocque experienced the failure of CALVARY HOSPITAL to provide a qualified ASL interpreter, despite multiple requests for same.

73. Mrs. Rocque died at Calvary Hospital on December 5th, 2019.

74. Between the period of November 25, 2019 to December 5, 2019, after VNS had dropped Mrs. Rocque's case, and the day that Mrs. Rocque died, Mrs. Rocque suffered extreme pain which was not ameliorated by medication that could have been effectively provided by VNS NY at Mrs. Rocque's home.

75. Between the period of November 25, 2019 to December 5, 2019, after VNS WESTCHESTER had dropped Mrs. Rocque's case, and the day that Mrs. Rocque died, Mrs. Rocque suffered extreme pain which was not ameliorated by medication that could have been effectively provided by VNS WESTCHESTER at Mrs. Rocque's home.

76. Had VNS NY provided a nurse to care for Mrs. Rocque at her home, none of the calls to MSK would have had to have been made to ameliorate Mrs. Rocque's extreme pain.

77. Had VNS WESTCHESTER provided a nurse to care for Mrs. Rocque at her home, none of the calls to MSK would have had to have been made to ameliorate Mrs. Rocque's extreme pain.

78. Had VNS NY provided a nurse to care for Mrs. Rocque from her home, Mrs. Rocque would not have had to be transported to MSK to receive IVF hydration treatment in an effort to ameliorate Mrs. Rocque's extreme pain.

79. Had VNS WESTCHESTER provided a nurse to care for Mrs. Rocque from her home, Mrs. Rocque would not have had to be transported to MSK to receive IVF hydration treatment in an effort to ameliorate Mrs. Rocque's extreme pain.

80. Had VNS NY provided a nurse to care for Mrs. Rocque at her home, Mrs. Rocque would have been able to receive more effective medication at her home which would have ameliorated Mrs. Rocque's extreme physical pain.

81. Had VNS WESTCHESTER provided a nurse to care for Mrs. Rocque at her home, Mrs. Rocque would have been able to receive more effective medication at her home which would have ameliorated Mrs. Rocque's extreme physical pain.

82. Had VNS N provided a nurse to care for Mrs. Rocque at her home, Mrs. Rocque's husband would not have had to act as Mrs. Rocque's caretaker by obtaining and giving

medication for his wife, and to witness the little his efforts could do to alleviate Mrs. Rocque's pain.

83. Had VNS WESTCHESTER provided a nurse to care for Mrs. Rocque at her home, Mrs. Rocque's husband would not have had to act as Mrs. Rocque's caretaker by obtaining and giving medication for his wife, and to witness the little his efforts could do to alleviate Mrs. Rocque's pain.

84. Had VNS NY provided a nurse to care for Mrs. Rocque from her home, Mrs. Rocque would have had access to more immediate and effective relief.

85. Had VNS WESTCHESTER provided a nurse to care for Mrs. Rocque from her home, Mrs. Rocque would have had access to more immediate and effective relief.

86. Mrs. Rocque experienced physical pain and extreme emotional distress and suffered from damages as a direct result of VNS NY'S failure to provide a nurse in the home of Mrs. Rocque.

87. Mrs. Rocque experienced physical pain and extreme emotional distress and suffered from damages as a direct result of VNS WESTCHESTER'S failure to provide a nurse in the home of Mrs. Rocque.

88. Mrs. Rocque experienced physical pain and extreme emotional distress and suffered from damages as a direct result of CAVALRY HOSPITAL'S failure to provide a qualified ASL interpreter to Mrs. Rocque during the last hours of her life.  She was unable to effectively communicate her concerns and her wishes effectively to hospital staff.

89. As Mrs. Rocque's companion and husband, Mr. Rocque also experienced extreme emotional distress and suffered damages as a direct result of VNS NY'S failure to provide a nurse in the home of Mrs. Rocque. Mr. Rocque had to provide care and nursing services during

his wife's last few weeks of life and therefore become her caretaker instead of being able to spend this precious time with her as her husband, without serving as caretaker.

90. As Mrs. Rocque's companion and husband, Mr. Rocque also experienced extreme emotional distress and suffered from damages as a direct result of VNS WESTCHESTER'S failure to provide a nurse in the home of Mrs. Rocque. Mr. Rocque had to provide care and nursing services during his wife's last few weeks of life and therefore become her caretaker instead of being able to spend this precious time with her as her husband, without serving as caretaker.

91. As Mrs. Rocque's companion and husband, Mr. Rocque also experienced extreme emotional distress and suffered from damages as a direct result of CALVARY HOSPITAL'S failure to provide an ASL interpreter at its premises. Mr. Rocque was unable to effectively communicate with CALVARY HOSPITAL'S staff and understand the decisions that were being made with respect to his wife.

<u>**COUNT I**</u>
<u>**DISCRIMINATION ON THE BASIS OF A**</u>
<u>**DISABILITY IN VIOLATION OF THE**</u>
<u>**REHABILITATION ACT**</u>

92. Plaintiffs re-allege and incorporate by reference each and every allegation above as if fully set forth herein.

93. Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) specifically states:

No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

94. At all times relevant to this action, the Rehabilitation Act, 29 U.S.C. § 794 et seq., was in full force and effect and applied to VNS' conduct.

95. Decedent Gwen Rocque was a qualified individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9)(B).

96. Plaintiff Lawrence Rocque is a qualified individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9)(B).

97. Defendants receive federal financial assistance within the meaning of the Rehabilitation Act. 29 U.S.C. § 794(a) and are thus covered entities inasmuch as they are public entities.

98. Defendant VNS NY and its agents, servants, officers, and/or employees acted under color of statute, ordinance, regulation, custom or usage of a State.

99. Defendant VNS WESTCHESTER and its agents, servants, officers, and/or employees acted under color of statute, ordinance, regulation, custom or usage of a State.

100. Defendant CALVARY HOSPITAL and its agents, servants, officers, and/or employees acted under color of statute, ordinance, regulation, custom or usage of a State.

101. The operations of Defendants are "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(3)(A)(ii).

102. The anti-discrimination provision of Section 504 of the Rehabilitation Act is enforceable through implied private rights of action.

103. Mrs. Rocque was entitled to the same medical care and communication access that Defendant VNS NY provided to other non-disabled persons.

104. Mrs. Rocque was entitled to the same medical care and communication access that Defendant VNS WESTCHESTER provided to other non-disabled persons.

105. Mrs. Rocque was entitled to the same medical care and communication access that Defendant CALVARY HOSPITAL provided to other non-disabled persons.

106. Mr. Rocque was entitled to effective communication with VNS NY due to his role as Mrs. Rocque's companion.

107. Mr. Rocque was entitled to effective communication with VNS WESTCHESTER due to his role as Mrs. Rocque's companion.

108. Mr. Rocque was entitled to effective communication with CALVARY HOSPITAL due to his role as Mrs. Rocque's companion.

109. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients, such as VNS NY, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R § 84.52(d)(1).

110. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients, such as VNS WESTCHESTER, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R § 84.52(d)(1).

111. The Department of Health and Human Services regulations implementing the Rehabilitation Act clarify the requirements for Federal financial recipients, such as CALVARY HOSPITAL, stating that "[a] recipient . . . that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory ... or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R § 84.52(d)(1).

112. Appropriate auxiliary aids include, but are not limited to, interpreters. 45 C.F.R. § 84.52(d)(3).

113. VNS NY failed to comply with the Rehabilitation Act by refusing to provide to Deaf individuals, including Mrs. Rocque:

- qualified interpreters;
- auxiliary aids and services;
- displays indicating availability of ASL interpreters;
- forms to ensure ability of individuals to designate ASL as their primary language;
- trained staff regarding the methods of communication employed by the deaf and hard-of-hearing, and how to ensure effective communications at its medical center;
- the provision/designation of an interpreter-ADA accessibility coordinator who would evaluate the needs of any deaf or hard-of-hearing individuals;
- policy and procedure to ensure compliance with the law;
- means of monitoring and reporting non-compliance with the law.

114. VNS WESTCHESTER failed to comply with the Rehabilitation Act by refusing to provide to Deaf individuals, including Mrs. Rocque:

- qualified interpreters;
- auxiliary aids and services;
- displays indicating availability of ASL interpreters;
- forms to ensure ability of individuals to designate ASL as their primary language;
- trained staff regarding the methods of communication employed by the deaf and hard-of-hearing, and how to ensure effective communications at its medical center;
- the provision/designation of an interpreter-ADA accessibility coordinator who would evaluate the needs of any deaf or hard-of-hearing individuals;
- policy and procedure to ensure compliance with the law;
- means of monitoring and reporting non-compliance with the law.

115. CALVARY HOSPITAL failed to comply with the Rehabilitation Act by refusing to provide to Deaf individuals, including Mrs. Rocque:

- qualified interpreters;
- auxiliary aids and services;
- displays indicating availability of ASL interpreters;
- forms to ensure ability of individuals to designate ASL as their primary language;
- trained staff regarding the methods of communication employed by the deaf and hard-of-hearing, and how to ensure effective communications at its medical center;
- the provision/designation of an interpreter-ADA accessibility coordinator who would evaluate the needs of any deaf or hard-of-hearing individuals;

- policy and procedure to ensure compliance with the law;
- means of monitoring and reporting non-compliance with the law.

116. The above are examples of techniques employed by other institutions to provide access to services, programs, benefits, activities and facilities for deaf and hard-of-hearing people in a manner consistent with the Rehabilitation Act and the ADA.

117. Defendant VNS NY did not provide services and sign language interpreters after Mr. and Mrs. Rocque requested services. Instead, Mrs. Rocque was informed that VNS NY would be dropping her case.

118. Defendant VNS WESTCHESTER did not provide services and sign language interpreters after Mr. and Mrs. Rocque requested services. Instead, Mrs. Rocque was informed that VNS WESTCHESTER would be dropping her case.

119. Defendant CALVARY HOSPITAL did not provide effective services and sign language interpreters to Mrs. Rocque.

120. As a result, Mrs. Rocque was not able to receive the care that she needed in the approximately two-week period from the time that VNS NY dropped her case until Mrs. Rocque was transferred to Cavalry Hospital, where she passed away.

121. As a result, Mrs. Rocque was not able to receive the care that she needed in the approximately two-week period from the time that VNS WESTCHESTER dropped her case until Mrs. Rocque was transferred to Cavalry Hospital, where she passed away.

122. As a result of the above, Mr Rocque and Mrs. Rocque were not able to effectively communicate with the staff at  CALVARY HOSPITAL.

123. During the approximately  two-week period, Mrs. Rocque experienced extreme pain and suffering which could have been ameliorated if VNS NY had not dropped her case and had assigned a nurse to her residence.

124. During the approximately two-week period, Mrs. Rocque experienced extreme pain and suffering which could have been ameliorated if VNS WESTCHESTER had not dropped her case and had assigned a nurse to her residence.

125. During the two-week period, Mrs. Rocque's husband acted as her caretaker.

126. Mrs. Rocque suffered physically in the last days of her life at home because of the failure to have a visiting nurse assigned to her at her home who would have provided pain medication, including intravenous morphine and other drugs, to ameliorate her suffering.

127. As a proximate result of VNS NY'S violations of Mrs. Rocque's rights under Rehabilitation Act, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, and unnecessary loss of rights, privileges, and property.

128. As a proximate result of VNS WESTCHESTER'S violations of Mrs. Rocque's rights under Rehabilitation Act, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, and unnecessary loss of rights, privileges, and property.

129. As a proximate result of CALVARY HOSPITAL'S violations of Mr. Rocque's and Mrs. Rocque's rights under Rehabilitation Act, Mr. Rocque and Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of their rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, and unnecessary loss of rights, privileges, and property.

130. Plaintiff Lawrence Rocque, who was Mrs. Rocque's companion, while being refused VNS NY'S services, also experienced anxiety, frustration, emotional distress, fear, and

discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

131. Plaintiff Lawrence Rocque, who was Mrs. Rocque's companion, while being refused VNS WESTCHESTER'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

132. Plaintiff Lawrence Rocque, who was Mrs. Rocque's companion, while being refused CALVARY HOSPITAL'S services, through the lack of ASL interpreters, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied understanding of Mrs. Rocque's care and medical condition.

133. VNS NY'S failure to comply with the Rehabilitation Act resulted in harm to Mrs. Rocque and Mr. Rocque.

134. VNS WESTCHESTER'S failure to comply with the Rehabilitation Act resulted in harm to Mrs. Rocque and Mr. Rocque.

135. CALVARY HOSPITAL'S failure to comply with the Rehabilitation Act resulted in harm to Mr. Rocque.

136. As a result of VNS NY'S breach of law, Mrs. Rocque and Mr. Rocque were damaged and emotionally and physically injured, and Plaintiffs thus demand compensatory damages for the physical pain and suffering they experienced, as well as emotional and other damages for loss of opportunity, dignitary harm, and economic damages and nominal damages.

137. As a result of VNS WESTCHESTER'S breach of law, Mrs. Rocque and Mr. Rocque were damaged and emotionally and physically injured, and Plaintiffs thus demand compensatory

damages for the physical pain and suffering they experienced, as well as emotional and other damages for loss of opportunity, dignitary harm, and economic damages and nominal damages.

138.  As a result of CALVARY HOSPITAL'S breach of law, Mr. Rocque and Mrs. Rocque were damaged and emotionally injured, and Plaintiffs thus demand compensatory damages for the physical pain and suffering they experienced, as well as emotional and other damages for loss of opportunity, dignitary harm, and economic damages and nominal damages.


**COUNT II**
**DISCRIMINATION UNDER THE NEW YORK STATE**
**EXECUTIVE LAW**

139.  Plaintiffs re-allege and incorporate by reference each and every allegation above as if fully set forth herein.

140.  All of VNS NY'S acts, practices, and policies described herein constitute discrimination against Mrs. Rocque and Mr. Rocque on the basis of their disability in violation of New York State Executive Law §296 et seq.

141.  All of VNS WESTCHESTER'S acts, practices, and policies described herein constitute discrimination against Mrs. Rocque and Mr. Rocque on the basis of their record of disability, in violation of New York State Executive Law §296 et seq.

142.  All of CALVARY HOSPITAL'S acts, practices and policies described herein constitute discrimination against Mr. Rocque and Mrs. Rocque on the basis of their perceived record of disability, in violation of New York State Executive Law §296 et seq.

143.  Decedent Gwen Rocque had a "disability" as defined in New York State Human Rights Law Section 292 (21), in that she was deaf.

144. Plaintiff Lawrence Rocque has a "disability", as defined in New York State Human Rights Law Section 292 (21), in that he is deaf, and also had a known "relationship or association" in that he accompanied Mrs. Rocque when she was denied of VNS NY'S services.

145. Plaintiff Lawrence Rocque has a "disability", as defined in New York State Human Rights Law Section 292 (21), in that he is deaf, and also had a known "relationship or association" in that he accompanied Mrs. Rocque when she was denied of VNS WESTCHESTER'S services.

146. Plaintiff Lawrence Rocque has a "disability", as defined in New York State Human Rights Law Section 292 (21), in that he is deaf, and also had a known "relationship or association" in that he accompanied Mrs. Rocque when she was denied of CALVARY HOSPITAL'S services.

147. Mr. Rocque was a companion of Mrs. Rocque and, as such, was entitled to reasonable accommodations regarding effective communication with VNS NY.

148. Mr. Rocque was a companion of Mrs. Rocque and, as such, was entitled to reasonable accommodations regarding effective communication with VNS WESTCHESTER.

149. Mr. Rocque was a companion of Mrs. Rocque and, as such, was entitled to reasonable accommodations regarding effective communication with CALVARY HOSPITAL.

150. VNS NY operates a "place of public accommodation" within the meaning of NY State Human Rights Law § 292 (9).

151. VNS WESTCHETER operated and VNS WESTCHESTER operates a "place of public accommodation" within the meaning of NY State Human Rights Law § 292 (9).

152. CALVARY HOSPITAL operates a "place of public accommodation" within the meaning of NY State Human Rights Law § 292 (9).

153. Defendant VNS NY discriminated against Mrs. Rocque and Mr. Rocque based on their disability as VNS NY was prohibited "directly or indirectly, to refuse, withhold from or deny to

such person any of the accommodations, advantages, facilities and privileges of any such place" of public accommodation. New York State Human Rights Law § 296 (2-a).

154. Defendant VNS WESTCHESTER discriminated against Mrs. Rocque and Mr. Rocque based on their disability as VNS WESTCHESTER was prohibited "directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities and privileges of any such place" of public accommodation. New York State Human Rights Law § 296 (2-a).

155. Defendant CALVARY HOSPITAL discriminated against Mr. Rocque and Mrs. Rocque based on their disability as CALVARY HOSPITAL was prohibited "directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities and privileges of any such place" of public accommodation. New York State Human Rights Law § 296 (2-a).

156. VNS NY discriminated against Mrs. Rocque and Mr. Rocque based on their disability and failed to make "reasonable accommodations" for their disabilities. New York State Human Rights Law § 292 (21).

157. VNS WESCHESTER discriminated against Mrs. Rocque and Mr. Rocque based on their disability and failed to make "reasonable accommodations" for their disabilities. New York State Human Rights Law § 292 (21).

158. CALVARY HOSPITAL discriminated against Mr. Rocque and Mrs. Rocque based on their disability and failed to make "reasonable accommodations" for their disabilities. New York State Human Rights Law § 292 (21).

159. VNS NY'S failure to comply with the New York State Human Rights Law resulted in harm to Mr. Rocque and Mrs. Rocque, including physical pain and suffering as well as emotional distress.

160. VNS WESTCHESTER'S failure to comply with the New York State Human Rights Law resulted in harm to Mr. Rocque and Mrs. Rocque, including physical pain and suffering as well as emotional distress.

161. CALVARY HOSPITAL'S failure to comply with the New York State Human Rights Law resulted in harm to Mr. Rocque and Mrs. Rocque, including emotional distress.

162. As a proximate cause of VNS NY'S violations of Mrs. Rocque's rights under New York State Executive Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, emotional distress, and unnecessary loss of rights, privileges, and property.

163. As a proximate cause of VNS WESTCHESTER'S violations of Mrs. Rocque's rights under New York State Executive Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, emotional distress, and unnecessary loss of rights, privileges, and property.

164. As a proximate cause of CALVARY HOSPITAL'S violations of Mrs. Rocque's rights under New York State Executive Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, suffering, emotional distress, and unnecessary loss of rights, privileges, and property and nominal damages.

165. Mr. Rocque, as Mrs. Rocque's companion, while being refused VNS NY'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

166. Mr. Rocque, as Mrs. Rocque's companion, while being refused VNS WESTCHESTER'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

167. Mr. Rocque, as Mrs. Rocque's companion, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

168. By reason of the foregoing, Plaintiffs demand compensatory damages for pain and suffering, emotional damages, and punitive damages, as well as damages for loss of opportunity and dignitary harm, economic damages and nominal damages and attorney's fees.

## COUNT III
## DISCRIMINATION UNDER THE NEW YORK CITY
## ADMINISTRATIVE CODE

169. Plaintiffs re-allege and incorporate by reference each and every allegation above as if fully set forth herein.

170. All of VNS NY'S acts, practices, and policies herein constitute discrimination against Mrs. Rocque and Mr. Rocque on the basis of their disability, in violation of the New York City Administrative Code §8-107 et seq.

171. All of VNS WESTCHESTER'S acts, practices, and policies herein constitute discrimination against Mrs. Rocque and Mr. Rocque on the basis of their record of disability, in violation of the New York City Administrative Code §8-107 et seq.

172. All of CALVARY HOSPITAL'S acts, practices, and policies herein constitute discrimination against Mrs. Rocque and  Mr. Rocque on the basis of his perceived record of disability, in violation of the New York City Administrative Code §8-107 et seq.

173. Decedent Mrs. Rocque had a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that she was deaf.

174. Plaintiff Mr. Rocque has a "disability" as defined in New York City Human Rights Law, Sec. 8-102 (16)(a), in that he is deaf.

175. VNS NY constitutes a place of "public accommodation" within the meaning of New York City Human Rights Law, Sec. 8–102 (9). This facility is a "covered entity," in that it is prohibited from engaging in unlawful discriminatory practices. New York City Human Rights Law § 8–102 (1), (17).

176. VNS WESTCHESTER constitutes a place of "public accommodation" within the meaning of New York City Human Rights Law, Sec. 8–102 (9). This facility is a "covered entity," in that it is prohibited from engaging in unlawful discriminatory practices. New York City Human Rights Law § 8–102 (1), (17).

177. CALVARY HOSPITAL constitutes a place of "public accommodation" within the meaning of New York City Human Rights Law, Sec. 8–102 (9). This facility is a "covered entity," in that it is prohibited from engaging in unlawful discriminatory practices. New York City Human Rights Law § 8–102 (1), (17).

178. Providing a sign language interpreter to allow deaf or hard-of-hearing individuals to communicate with medical staff during evaluation and treatment is a "reasonable accommodation" within the meaning of New York City Human Rights Law, Sec. 8-102 (18).

179. VNS NYdiscriminated against Mrs. Rocque on the basis of Mrs. Rocque's disability and failed to make a "reasonable accommodation" for Mrs. Rocque's disability when it failed to provide Mrs. Rocque with a qualified sign language interpreter and dropped her case and thus denied her treatment. New York City Human Rights Law, Sec. 8-107 (5), (15).

180. VNS WESTCHESTER discriminated against Mrs. Rocque on the basis of Mrs. Rocque's disability and failed to make a "reasonable accommodation" for Mrs. Rocque's disability when it failed to provide Mrs. Rocque with a qualified sign language interpreter and dropped her case and thus denied her treatment. New York City Human Rights Law, Sec. 8-107 (5), (15).

181. CALVARY HOSPITAL discriminated against Mrs. Rocque on the basis of her disability and failed to make a "reasonable accommodation" for Mrs. Rocque's disability when it failed to provide Mrs. Rocque with a qualified sign language interpreter. New York City Human Rights Law, Sec. 8-107 (5), (15).

182. VNS NY failed to make a "reasonable accommodation" for Mr. Rocque's disability when it failed to provide Mr. Rocque with effective communication with regard to Mrs. Rocque's medical care and treatment.

183. VNS WESTCHESTER failed to make a "reasonable accommodation" for Mr. Rocque's disability when it failed to provide Mr. Rocque with effective communication with regard to Mrs. Rocque's medical care and treatment.

184. CALVARY HOSPITAL failed to make a "reasonable accommodation" for Mr. Rocque's disability when it failed to provide Mr. Rocque with effective communication with regard to Mrs. Rocque's medical care and treatment.

185. As a result of VNS NY'S actions in violation of the New York City Human Rights Law, Mrs. Rocque experienced physical pain and suffering and emotional distress.

186. As a result of VNS WESTCHESTER'S actions in violation of the New York City Human Rights Law, Mrs. Rocque experienced physical pain and suffering and emotional distress.

187. As a result of CALVARY HOSPITAL'S actions in violation of the New York City Human Rights Law, Mrs. Rocque experienced suffering and emotional distress.

188. VNS NY had wantonly, recklessly and maliciously acted with disregard for the rights and wellbeing of Mrs. Rocque and Mr. Rocque, and Plaintiffs are thereby entitled to punitive damages.

189. VNS WESTCHESTER had wantonly, recklessly and maliciously acted with disregard for the rights and wellbeing of Mrs. Rocque and Mr. Rocque, and Plaintiffs are thereby entitled to punitive damages.

190. CALVARY HOSPITAL had wantonly, recklessly and maliciously acted with disregard for the rights and wellbeing of Mrs. Rocque and Mr. Rocque, and Plaintiffs are thereby entitled to punitive damages.

191. As a proximate cause of VNS NY'S violations of Mrs. Rocque's rights under New York City Human Rights Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, emotional distress, and unnecessary loss of rights, privileges, and property.

192. As a proximate cause of VNS WESTCHESTER'S violations of Mrs. Rocque's rights under New York City Human Rights Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, emotional distress, and unnecessary loss of rights, privileges, and property.

193. As a proximate cause of CALVARY HOSPITAL'S violations of Mrs. Rocque's rights under New York City Human Rights Law, Mrs. Rocque suffered discrimination, unequal treatment, exclusion, violations of her rights under the laws of the United States, loss of dignity, frustration, humiliation, physical pain and suffering, emotional distress, and unnecessary loss of rights, privileges, and property.

194. Mr. Rocque, as Mrs. Rocque's companion, while being refused VNS NY'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

195. Mr. Rocque, as Mrs. Rocque's companion, while being refused VNS WESTCHESTER'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

196. Mr. Rocque, as Mrs. Rocque's companion, while being refused CALVARY HOSPITAL'S services, also experienced anxiety, frustration, emotional distress, fear, and discrimination in being denied an effective understanding of Mrs. Rocque's care and medical condition.

197. By reason of the foregoing, Plaintiffs demand compensatory and punitive damages, attorney's fees, as well as damages for physical pain and suffering,  loss of opportunity, dignitary harm, and economic damages and nominal damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

i.      On the First Cause of Action, a judgment against Defendants and an award of compensatory damages for physical pain and suffering, loss of opportunity, dignitary harm and humiliation, punitive and/or exemplary and/or emotional damages, attorneys' fees and costs, pre-judgment and post-judgment interest, as well a nominal damages, in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper;

ii.    On the Second Cause of Action a judgment against Defendants and an award of compensatory damages for severe emotional and physical pain and suffering, punitive and/or exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest, as well as nominal damages, in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper; and

iii.    On the Third Cause of Action a judgment against Defendants and an award of compensatory damages for severe emotional and physical pain and suffering, punitive and/or exemplary damages, attorneys' fees and costs, pre-judgment and post-judgment interest, as well in an amount to be determined at trial, and further relief as this Honorable Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby request a trial by jury as to each and every claim for which they are so entitled.

Dated: October 16, 2022

New York, New York

CLARA R. SMIT, ESQ.

By: _/s/ Clara R. Smit

Clara R. Smit, Esq.
100 Horizon Center Blvd Hamilton, NJ 08691

(732) 843-6600

Bruce Gitlin

By: /s/ Bruce J. Gitlin

Bruce J. Gitlin, P.C. Suite 411
2095 Broadway

New York, NY 10023

(212) 514-5437